CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 0 9 2013

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Action No.: 7:11-cr-0008-2 |
| | ) |
| v. | ) MEMORANDUM OPINION |
| | ) |
| | ) By: James C. Turk |
| SHANE ALAN LAFFERTY. | ) Senior United States District Judge |
| | ) |

Pending before the Court is a motion under 28 U.S.C. § 2255 by Shane Alan Lafferty ("Lafferty"), a federal inmate proceeding pro se, challenging his conviction and sentence. ECF No. 108, 114. Lafferty's motion sets forth five grounds for relief, all couched as ineffective assistance of counsel claims.[1] Specifically, he claims that he was denied effective assistance of counsel because of the following alleged errors by his appointed attorney, David Damico ("Damico"): (1) counsel failed to contest the restitution portion of his sentence, which ordered that Lafferty pay $2,690 and which amount was the result of "relevant conduct" under U.S.S.G. § 1B1.1; (2) counsel failed to object to a two-point increase to Lafferty's offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(B), which increase was unsupported by the facts of the offense; (3) counsel failed to object to the obstruction of justice enhancement under U.S.S.G. § 3C1.1, and the facts underlying that enhancement were neither "admitted to on [the] record nor found by a jury"; (4) counsel failed to reach a plea agreement on Lafferty's original indictment, which charged him only with counterfeiting offenses, and not with the sale of a firearm to a convicted felon, which was added to the subsequent information to which Lafferty pleaded guilty; and (5) counsel failed to inform him that his § 922(d)(1) violation was an "infamous act" that could only be brought by way of information (as opposed to an indictment) if Lafferty waived his right to an

---

[1] Lafferty lists four grounds for relief in his § 2255 motion, but the Court later granted him leave to amend, and the amendment added a fifth claim.

indictment. He claims that he would not have waived indictment had he known of the "procedure or law" concerning this issue. ECF No. 114, Def.'s Mot to Amend, at 2.

On October 22, 2012, the United States filed a motion to dismiss, ECF No. 130, which includes an affidavit from counsel addressing the first claim only.[2] By Order dated October 23, 2012, the Court notified Lafferty of his opportunity to file a response to the motion to dismiss, see ECF No. 131, but he has not filed one and the deadline for doing so has now passed.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

According to the proffer at Lafferty's guilty plea, with which he agreed under oath, Lafferty and more than seven other co-conspirators were involved in a counterfeit ring in and around Roanoke, Virginia, from approximately June 2010 until November 19, 2010. ECF No. 118, Transcript of Guilty Plea (hereinafter "Plea Tr.") at 24-25. During that time-frame, the conspiracy made more than $70,000 in counterfeit money. Lafferty purchased more than $5,000 of the counterfeit money, on at least two occasions. Id.

As to Count Three of the Information, which alleged he knowingly sold a firearm to a convicted felon, the United States proffered that a confidential informant ("CI"), who was a convicted felon, made a telephone call to Lafferty on September 22, 2009, setting up a transaction to purchase a specific model pistol for approximately $250.00. The following day, in a recorded telephone conversation, the CI told Lafferty he was a convicted felon and the deal was arranged. On the same date, the CI and an undercover police officer met up with Lafferty and another person and drove them from Roanoke to Bedford. During the drive, the CI and Lafferty discussed their time served in various jails. Once in Bedford, the CI and Lafferty went into David Caldwell's house to complete the gun purchase. The CI paid for the gun, and Lafferty

---

[2] By Order dated October 11, 2012, the Court granted in part the motion of the United States to obtain an affidavit from defense counsel, but only as to Lafferty's first ground for relief. See ECF No. 128.

2

then went into Caldwell's bedroom with Caldwell, and Lafferty returned with the gun and gave it to the CI. The gun was subsequently relinquished to law enforcement. Upon inspection and examination, it was determined that the firearm was functioning and, according to a firearms interstate nexus expert, had been shipped or transported in interstate or foreign commerce. Plea Tr. at 26-27.

Lafferty was originally charged in an indictment naming him and other co-conspirators only on the counterfeiting charges. ECF No. 15. Subsequently, Lafferty agreed to waive indictment and instead entered a guilty plea to all counts in a three-count information. Count One of the information charged him with conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371. Count Two alleged that he passed, uttered, or possessed counterfeit obligations or securities of the United States, in violation of 18 U.S.C. § 472. Count Three charged him with selling a firearm to a convicted felon, in violation of 19 U.S.C. § 922(d)(1). ECF No. 78.

The plea agreement contained a number of specific admissions and agreements as to the applicable sentencing guidelines. First, as to Counts One and Two, which were related for sentencing purposes, Lafferty agreed that his base offense level should be 9. ECF No. 80, Plea Agreement at 3-4. He also agreed to a two-level increase because the offense involved a loss of more than $5,000 and a two-level increase for obstruction of justice, resulting in an adjusted offense level of 13.[3] Id. As to Count Three, Lafferty stipulated and agreed that his base offense level was 20. The higher offense level would be used and, because the charges were counted separately, he received one additional level for a multi-count adjustment pursuant to U.S.S.G. § 3D1.4, and then received a deduction of three points for acceptance of responsibility, resulting

---

[3] The obstruction of justice enhancement was based on Lafferty agreeing, while sharing a pod with one of his co-defendants, to pay the co-defendant $1500 if the co-defendant would not provide information to law enforcement about Lafferty's involvement in the offense. PSR ¶¶ 22, 33.

in a total offense level of 18. Id. During the guilty plea hearing, Lafferty acknowledged that he had reviewed the plea agreement with his counsel prior to entering his plea, and that he understood what was in the plea agreement. Id. at 21. He also told the Court that he agreed with the adjusted offense level of 18. Id. at 21-22.

Consistent with Lafferty's plea agreement, the Presentence Investigation Report ("PSR") prepared by the probation officer found a total adjusted offense level of 18, and concluded that Lafferty's criminal history category was a V. The resulting advisory guideline range called for a term of imprisonment of 51-60 months for Count One, and 51-63 months for Counts Two and Three.

At Lafferty's sentencing hearing on July 19, 2011, his counsel offered several objections to several of the scored convictions for criminal history purposes. He also made a general objection that Lafferty's criminal history category overstated his criminal history. Specifically, he pointed out that Lafferty had received points for various convictions that were simply either a failure to pay court costs or fines or a failure to appear for a court date to explain why he was not paying costs. See ECF No. 119, Sentencing Transcript ("S. Tr.") at 5-8. Counsel also noted that the most serious of Lafferty's convictions, a robbery, was also an older conviction, and had occurred when Lafferty was only 19 years old. Lafferty also testified at sentencing.

This Court adopted the PSR and the offense level set forth therein, consistent with the Plea Agreement. S. Tr. at 37-38. It sentenced Lafferty to a 51-month term of imprisonment on each of the three counts, to run concurrently, to be followed by a 36-month term of supervised release. S. Tr. at 38-39. The Court also ordered restitution in the amount of $2,690 and imposed a mandatory special assessment of $300. Id. at 40-41. At the conclusion of sentencing, the Court

inquired whether Lafferty felt that "the sentence imposed was in keeping with [his] plea agreement" and Lafferty responded, "Yes, sir." Id. at 43.

As noted, Lafferty's plea agreement contained a waiver of his right to appeal, and he did not file a notice of appeal. His § 2255 motion was timely filed. In its Motion to Dismiss, the United States argues that Lafferty's motion is barred by the waiver of appellate and § 2255 rights contained in his written plea agreement. It further contends that his claims, even if examined on their merits, do not entitle Lafferty to relief.

## II. ANALYSIS

### A. Waiver of Right to Collaterally Attack Conviction and Sentence

As an initial matter, the Court is puzzled by the Government's reliance on Lafferty's § 2255 waiver, given that the plain language of the waiver expressly excludes ineffective assistance of counsel claims from its scope. ECF No. 80, at 8 (waiving "any right to collaterally attack . . . any order issues in this matter, unless such attack is based on ineffective assistance of counsel") (emphasis added). Accordingly, this Court rejects the argument that Lafferty's claims here—all of which are ineffective assistance of counsel claims—are barred by his limited waiver of § 2255 rights. It nonetheless concludes that Lafferty is not entitled to relief on any of this claims because each of his claims fail to meet the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). For this reason, and upon review of the submissions of the parties and the underlying criminal record, Case No. 7:11CR8, the Court finds that Respondent's Motion to Dismiss, ECF No. 130, must be granted.

### B. Ineffective Assistance Claims

In order to establish an ineffective assistance claim, Lafferty must demonstrate both that his "counsel's performance was deficient" and "that the deficient performance prejudiced the

defense." Strickland, 466 U.S. at 687. Failure to satisfy either one of these prongs is fatal to the claim and thus there is no need "to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

In order to satisfy the deficiency prong, Lafferty must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. This requires proof that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. In fairly evaluating an attorney's conduct, "judicial scrutiny . . . must be highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight." Id. at 689. Notably, moreover, Strickland establishes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

As to the prejudice prong, Lafferty "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 691. To establish prejudice in the context of sentencing, he must show a reasonable probability that he would have received a lesser sentence. Glover v. United States, 531 U.S. 198, 203-04 (2001) (rejecting the Seventh Circuit's rule that "a minimal amount of additional time in prison cannot constitute prejudice" and stating instead that "any amount of [additional] jail time has Sixth Amendment significance."); Jones v. United States, 2011 WL 6780786, *2 (E.D.N.C. Dec. 27, 2011) (relying on Glover to conclude a "petitioner must show a reasonable probability that he would have received a more lenient sentence" absent counsel's deficient performance); United States v. Spafford, 2010 WL 2991034, *2 (W.D. Va. Jul. 28, 2010) (a § 2255 petitioner demonstrates prejudice by showing that he received additional prison time at sentencing). Moreover, as noted, if the petitioner fails to satisfy his burden of "proving Strickland prejudice,"

the court "need not consider the performance prong." Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Strickland, 466 U.S. at 687).

### 1. Counsel's Failure to Challenge the Restitution

Lafferty's first claim alleges that his counsel was ineffective for failing to challenge the restitution order against him. The Court ordered restitution in the total amount of $2,690, based on the PSR's itemization of damages for each of the victims. Lafferty offers little detail in support of this claim; instead, the entirety of his explanation for this claim states:

> Attorney failed to contest restitution order of $2,690.00 which was issued under 'relevant conduct 1B1.1" (failure to file appeal) as requested."

ECF No. 108 at 4.

As noted, Damico's affidavit responds to Lafferty's allegations concerning restitution by stating first that Lafferty never made any request, either in writing or verbally, for Damico to appeal this portion of the judgment or to object to it. ECF No. 130, Ex. 1. Damico's testimony is buttressed by the record at sentencing, during which Lafferty did not express any desire to appeal, but instead told the Court he believed the sentence imposed was in keeping with his plea agreement. ECF No. 119 at 43. Notably, moreover, Lafferty had waived his right to appeal his conviction or his sentence in his plea agreement and there was ample evidence in the record supporting the restitution amount. Thus, even if he had requested that his counsel object at sentencing to the restitution amount and his counsel had done so, or if he had appealed it, it is evident that the result of the proceeding would not have been different. Indeed, Lafferty offers no basis, even in his § 2255 motion, for any challenge to the restitution amount. For all of these reasons, Lafferty has failed to establish prejudice under Strickland and is not entitled to relief on this claim.

7

## 2. Failure to Object to Offense Level Increases for Amounts Involved in Offense and Obstruction of Justice

The Court discusses Lafferty's second and third claims together because they both fail for the same reason. In these two claims, Lafferty challenges his counsel's failure to object to: (a) the two-level increase for the amount involved in the offense; and (b) the two-level obstruction of justice enhancement, respectively. Both of these claims fail because Lafferty cannot establish prejudice and it is therefore unnecessary to address the performance prong on these claims.[4] As his counsel explained during the guilty plea proceeding, the increase to the offense level for the amount of money involved was agreed to "because it doesn't change the outcome." Plea Tr. at 28. The same is true of the obstruction of justice enhancement. This is because, as noted above, Lafferty was sentenced using the higher offense level for Count Three, the firearm charge, rendering his offense level for Counts One and Two (which was lower) irrelevant to the advisory guideline range. Thus, the two increases to his offense level for Counts One and Two had no effect whatsoever on Lafferty's advisory guideline range or his sentence. Accordingly, counsel's failure to object did not result in any increase to Lafferty's sentence, and thus in no way prejudiced him. See Glover, 531 U.S. at 203-04. His second and third claims alleging ineffective assistance claims therefore fail and are DISMISSED.

---

[4] The Court notes, moreover, that Lafferty's plea agreement agreed to both of these adjustments in calculating his offense level. Additionally, during the guilty plea proceeding, Lafferty affirmed that he understood and agreed to an adjusted offense level of 20, which included both adjustments. Plea Tr. at 21-22. As is evident from a reading of the plea transcript, moreover, Lafferty's plea agreement was knowing and voluntary and Lafferty has not challenged the voluntariness of his plea in these § 2255 proceedings. Accordingly, there is no basis for finding counsel deficient for failing to raise these challenges at sentencing. Furthermore, even if there had been some basis for objecting, counsel would have needed to do more than simply raise an objection. See United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990) ("A mere objection to the finding in the presentence report is not sufficient.... Without an affirmative showing the information is inaccurate, the court is free to adopt the findings of the [presentence report] without more specific inquiry or explanation."). Generally, the Court is entitled to rely on the record as set out in the PSR because the PSR "bears the earmarks of derivation from Shepard-approved sources." United States v. Thompson, 421 F.3d 278, 285 (4th Cir. 2005) (citing Shepard v. United States, 544 U.S. 13 (2005)). Lafferty does not even allege, let alone provide any evidence, that the information supporting the obstruction enhancement or the enhancement for the amount of loss is inaccurate or wrong.

### 3. Failure to Obtain a Plea Agreement on the Original Indictment

In his fourth ground for relief, Lafferty argues that his counsel "fail[ed] to reach a plea agreement on [Lafferty's] original indictment." As an initial matter, it is not clear to the Court precisely what Lafferty is alleging, but the Court interprets this claim as alleging that he would not have been charged at all with the felon-in-possession charge had he pleaded guilty to the initial indictment.[5] This claim fails because Lafferty cannot establish either that his counsel was deficient or that he was prejudiced by the alleged failure. In particular, he has offered no evidence and has not even alleged that a plea agreement was offered only as to the indictment (without the firearm charge), nor any evidence to show that the United States would have been willing not to bring the firearm charge (or would not have brought it) had he pled guilty only to the original indictment. Instead, the evidence against Lafferty on the firearm charge was very strong. Indeed, while Lafferty's counsel questioned whether there was sufficient evidence to convict on the counterfeiting charges, he noted that "[t]hey've got [Lafferty] on the firearm charge, and this is an offer that's too good to refuse." Plea Tr. at 28.[6]

### 4. Failure to Advise Of Right to Be Charged By Indictment

Lafferty's fifth and final claim is that he did not know he could insist on a right to be charged by indictment, or that his counsel failed to so advise him. This claim is flatly contradicted by Lafferty's own testimony at his plea hearing. During the plea colloquy, the Court expressly informed him: "you cannot be proceeded on a felony count in this court unless you

---

[5] The Government apparently interprets his fourth claim as arguing that counsel was deficient for allowing him to plead guilty to the information, rather than requiring that the Government obtain an indictment from the grand jury. So interpreted, this is essentially just a slightly different iteration of Lafferty's fifth claim, and the Court addresses it in the context of his fifth claim.

[6] Although the issue was not discussed at sentencing because the Court sustained an objection to the question (which had been posed to Lafferty while testifying), the U.S. Attorney suggested that, prior to Lafferty pleading guilty, there had been discussions about "potentially charging [him] with an additional charge." Sent. Tr. at 24. This may explain, in part, why the plea agreement offer seemed "too good to refuse."

9

have been indicted by a grand jury or unless you waive indictment by a grand jury. If you waive indictment by a grand jury, the case will proceed against you on the information the same as though you had been indicted." Plea Tr. at 8. When asked if he understood, Lafferty responded, "Yes, sir." Id. at 9. The Court then inquired: "[D]o you tell me you want to waive indictment by a grand jury and proceed on the information the same as though you had been indicted?" and Lafferty replied, "Yes, sir." Id. Lafferty also signed the waiver of an indictment in open court, stating that he understood the charges against him, waived his right to prosecution by indictment, and consented to prosecution by information. ECF No. 79, Waiver of Indictment.

As the Fourth Circuit has instructed, "a defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity . . . .'" United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted). "[B]ecause they do carry such a presumption, they present 'a formidable barrier in any subsequent collateral proceedings." Id. (citations omitted.) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). "Thus, in the absence of extraordinary circumstances . . . , allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always "palpably incredible" and "patently frivolous or false." Id. (citation omitted). Absent extraordinary circumstances, then, "a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22. Otherwise, one of the primary virtues of Rule 11 colloquies— "permit[ting] quick disposition of baseless collateral attacks," Blackledge, 431 U.S. at 79 n.19— would be eviscerated. Lemaster, 403 F.3d at 222.

In this case, as in Lemaster, there are no extraordinary circumstances that warrant disregarding Lafferty's sworn testimony during his plea colloquy. His testimony clearly shows

10

that he was in fact advised of his right to be charged by indictment, and that he knowingly chose to waive it. Even if his counsel failed to so advise him, the Court advised him, and thus there is no prejudice to Lafferty. Accordingly, his fifth claim fails.

## III. CERTIFICATE OF APPEALABILITY

When a district court enters a final order denying a § 2255 motion the court must grant or deny a certificate of appealability. Rule 11(a) of the Rules Governing § 2255 Proceedings. A certificate of appealability should only issue if the petitioner has made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2255(c)(2). Because Lafferty has failed to make "a substantial showing of the denial of a constitutional right," for the reasons already outlined in this Memorandum Opinion, the Court finds that it would be inappropriate to grant a certificate of appealability in this case.

## IV. CONCLUSION

For the reasons stated above, the Court will grant the United States' motion to dismiss Lafferty's § 2255 petition.

ENTER: This 9th day of January, 2013.

James C. Turk
Senior United States District Judge